Mr. Gerber, you may proceed. Good morning, Your Honors. May it please the Court, my name is Seth Gerber and I represent appellants and I'd like to reserve three minutes for rebuttal. All right, you'll need to keep track of your time then. Thank you, Your Honor. The District Court in this case erred fundamentally by treating this case as if he was ruling on a motion to dismiss for form nonconvenience as opposed to a motion for partial summary judgment as to one portion of a much broader declaratory relief claim concerning the enforceability of numerous contractual provisions that operate together to vitiate California public policy. That error has produced four procedural problems. First, the Court misapplied the U.S. Supreme Court's ruling in Motor Ship Bremen v. Zapata Offshore because in that case the U.S. Supreme Court analyzed the public policy of the form where the case was filed, in that case in Florida, and said that in ruling on a motion to dismiss for form nonconvenience, you have to analyze the public policy of the jurisdiction where the case is filed. In this case, because of the strange procedural mechanism utilized by Lockton here to evade California public policy, they filed the declaratory relief claim in the designated form. And so the District Court in this case erred by looking at Missouri, the designated form's public policy, and ignoring California's public policy, and that's directly contrary to what the U.S. Supreme Court said must be done in the Bremen v. Zapata case. Second, because the underlying motion – Why does bringing the suit in Missouri impact the California public policy in any way, shape, or form? It seems to me like you're mixing the choice of law questions with the choice of venue provision of the contract, right? In the end, Judge Boo is as capable as any judge in California as to dividing the choice of law question, and he may very well arrive at the conclusion that California law is actually the appropriate law to apply during a choice of law analysis, notwithstanding the contractual provision on choice of law. And then, at that point, the California public policy would be clearly in play. Your Honor raises a very good question. California public policy is in play because the U.S. Supreme Court stated in the Bremen case that you have to look to see whether the forum selection clause, whether enforcing the forum selection clause, assuming the case was filed in the wrong jurisdiction, would be unfair or unreasonable. And in making that determination in the Bremen case, the U.S. Supreme Court said you have to look at the jurisdiction where the case was improperly filed, allegedly, to see whether sending the case to the designated forum would violate a public policy. That was a case that involved an international shipping between an American company and Unterwesser, which is a German company that operated a tow ship. And the tow ship was to take an oil rig from Louisiana across the Gulf of Mexico, across the Atlantic Ocean to Italy in the Adriatic Sea. And what the Court was asking itself in that case is would allowing Unterwesser to evade any liability for its own negligence in towing the oil rig violate America's public policy in the Bissell case that does not allow for exculpatory clauses that allow towage operators to evade liability for their own negligence when towing vessels through American waters. And so it is an interrelated issue, both under the U.S. Supreme Court, Judge Erickson, under the precedent of Bremen, and also even under Missouri Supreme Court precedent in the High Life case. What's interesting in the High Life decision, Your Honor, is that when Missouri Supreme Court was asked whether or not sending a case to Kentucky under a forum selection clause would violate public policy, the Missouri Supreme Court cited approvingly and discussed at length the Hall v. Superior Court decision from California. It's a California case. And what Missouri Supreme Court did in High Life is they decided not to dismiss a case and send it to Kentucky because doing so would violate Missouri's public policy and cited the California case Hall. The Hall case, Your Honor, from California states that in analyzing forum selection provisions and their enforceability, that question, according to Hall, is inextricably intertwined with the question of a choice of law. So whether you're looking at this issue from the U.S. Supreme Court perspective in the Bremen decision or if you're looking at the High Life case from the Missouri Supreme Court perspective in the Hall v. Superior Court case, under any of those jurisdictions, what Judge Booth should have done is ask himself, is sending, is allowing this case to proceed here a violation of California's fundamental non-waivable 152-year-old public policy in favor of employee mobility and open competition? And what's notable, Your Honor, is we could easily switch out the word California and include the words North Dakota. Because in the Eighth Circuit, there are two of the four jurisdictions in this country that have public policies banning non-competes. North Dakota's ban on non-competes dates back to 1865. It predates California's, which was enacted in 1872. Both California and North Dakota's statute, North Dakota's statute is 9-0806, is virtually identical to the California Business and Professions Code, 16-600. Both of those provisions, North Dakota's and California's, are based on the language from the David Douglas Field Code from New York. And North Dakota has that public policy, and Minnesota, just in July of 2023, banned non-competes as well. So if this decision stands in this case and is not reversed, you could have a federal judge in Missouri vitiating the public policy in Minnesota and North Dakota that are against non-competes as being anti-competitive. The second problem was that because we were dealing with a motion for partial summary judgment on a declaratory relief claim instead of a motion to dismiss reformed nonconvenience, the court did not give due consideration to the many disputed issues of fact that were present in this case. And those include disputed issues of fact as to whether, like in the Bremen case, this was a contract between two business organizations. In fact, this was a multibillion-dollar company, brokerage firm, one of the largest privately-held brokerage firms in the world, giving non-negotiable take-it-or-leave-it contracts of adhesion to insurance producers who work, reside, and service their clients in California. Those disputed issues of fact should have warranted what viewed in most favorable light to the non-moving party under the summary judgment standard should have warranted a denial of the motion for partial summary judgment. This is a different procedural posture than you typically would see a question raised about form selection clauses. Normally, you see a form selection clause issued. According to the Supreme Court, it is addressed either through a motion to dismiss reformed nonconvenience or, if the case is filed in the wrong federal venue, a motion to change venue under 1404A. You don't typically see parties using this very sophisticated misuse of federal procedure to file a debt relief claim in the designated form, get a partial summary judgment ruling, and then certify that under Rule 54B with the stated intent to interfere and shut down ongoing, in parallel, in personam state court proceedings. The Congress has limited federal courts' ability to enjoin state ongoing state court proceedings when it enacted the Anti-Injunction Act. This is an end run around the Anti-Injunction Act, and it's a misuse of the Declaratory Judgment Act, which is not intended to remedy a past wrong, the filing of the case in the wrong jurisdiction, but is to give guidance as to prospective conduct. And so this was a complete misuse of federal procedure that would undermine U.S. Supreme Court precedent as stated in Donovan v. City of Dallas. In that case, the U.S. Supreme Court made clear that you can have, in parallel, ongoing, in personam proceedings in state and federal court, and that it is a principle of federalism in our country that federal courts should not be shutting down and obstructing ongoing state court proceedings. And that's exactly what the stated purpose of this procedural misuse was here. The third mistake in what the district court did was in certifying the summary judgment ruling under Rule 54B. The court said this was an individual claim. The question had to do specifically with the enforceability of a form selection clause. That was just one contractual provision of a much broader declaratory relief claim that raised the question of the overall enforceability of combining a Missouri form selection clause with a Missouri choice of law provision that says Missouri law applies without reference to choice of law principles, which addresses Judge Erickson's question. They contracted, don't even do a choice of law analysis, and combined it with restrictive covenants, which both California judges in the Giblin and Kauffman cases have ruled are plainly unlawful and constitute unfair competition in the state of California in accordance with our public policy, which is no different than North Dakota's public policy. And so not only was the judge in error in certifying just this one aspect of an overall declaratory relief claim, but the other four claims in the case also relate to the form selection clause. Let me give an example. There's a breach of contract claim. There's a claim that Mr. Kauffman and Ms. Giblin breached their agreements because they filed the California case. And Lockton is asking for nominal damages to use it as a hook to ask for a massive attorney's fees award to punish them simply for going to court and asking for a declaration of their rights in California under California public policy, which is non-waivable and fundamental, and both California judges refused to dismiss this case. The last issue to touch on, again, is the one of federalism. In this case, to allow this 54B decision to go on will result in a multiplicity of appeals because the same issues will be raised on choice of law when that's subsequently adjudicated, as well as for breach of the form selection clause. All of the facts and law concerning choice of law and breach of the form selection clause are directly the same as the question relating to the declaratory relief just pertaining to the one aspect of form selection. But as I stated, in Donovan v. Dallas, the Supreme Court stated, quote, early in the history of our country, a general rule was established that state and federal courts would not interfere with or try to restrain each other's proceedings. And that rule has continued substantially unchanged to this time. If your honors do not vacate these two rulings and reverse and remand, that federalism will be undermined today. Thank you. I reserve the rest of my time. All right, counsel, you may proceed. Good morning, your honors. Russ Falconer for the appellees, and may it please the court. Please speak up if you will. Is this better? It's better. Thank you, your honor. You have a button on the podium. You can raise it a little, if that would help you. That might help. Thank you, your honor. Okay. Your honors, every major issue in this appeal is controlled by binding precedent, either from this court or the United States Supreme Court. The jurisdictional issue on Rule 54B, this court's decision in the John Deere insurance case, establishes that the declaratory judgment claim we brought on the enforceability of the Foreign Selection Clause is a separate claim for Rule 54B purposes. On the discretionary component of the Rule 54B analysis, this court's decision in the Downing v. Reisland food matter gave the court wide discretion to rely on the rest judicata considerations and the other considerations it relied on in certifying this judgment as final. I'm dubious about the proposition that this is a separate claim that's appealable. So, I mean, it's not really a claim. It's a predicate to, it's a door, it's a gateway to a claim, it seems to me, on a substantive matter. But before we get to that, I wonder if you could help me a little bit with how the district court dealt with this case when it was asked to rule on the validity of the clause. Did the district court regard this as a procedural matter or a substantive matter? And did it rely on federal law or state law to decide that question? The district court decided the enforceability of the Foreign Selection Clause as a matter of federal procedural law. Yeah. So, if it's a procedural matter, how is it a claim? It's a claim under the Declaratory Judgment Act, Your Honor, which gives Lockton the right to enforce that Foreign Selection Clause both in Missouri and in California. I think this court's precedents at times have treated the enforceability question as a question of state law. If this court finds that that's the better course, that doesn't change the outcome here because Missouri It would be a matter of, I'm sorry to interrupt, but it's a matter of some importance to me. It would be a matter of state law if we're talking about the substantive validity of the clause as opposed to the procedural point that the district court seemed to rely on. It may not matter which it is, but it seems to me, I think a little clarity is created here by realizing what's going on, and what's going on is that the district court, it seems to me, ruled as a procedural matter that this clause was okay. Your Honor, there are elements of... I'm sorry. I'm sorry. Let me finish. Oh, I'm sorry. I apologize. I take a breath every now and then, so give me a chance. Apologies, Your Honor. As a procedural matter, and so I'm just, well, I've lost my train of thought. Go ahead. Yeah, I apologize for interrupting, Your Honor. The Foreign Selection Clause is a stand-alone contractual agreement between the appellees, my clients, and the appellants. It's certainly enforceable as a matter of state contract law, and it's settled in this circuit and elsewhere on matters of formation, validity, interpretation, classic contract law issues. All of those are governed by state law. The only open question is on enforceability in federal court, and in some of this Court's past cases, it said we don't need to decide whether that's a matter... the enforceability question is a matter of federal law or state law because in Missouri, where this case was heard, Missouri law and federal law are identical on the question of enforceability. And we heard an argument that on some issues of this case, the appellants would like to ask the Court to apply California law. I'd like to address on that point... I'd like to address the Court's attention to the coral gas case that we cited. It's on page 38 of our brief. Footnote 1 in that case definitively resolves this question, that the state of Missouri, its courts always apply Missouri law to matters that Missouri law deems procedural. And under Missouri law, the enforceability of a forum selection clause is procedural. So as a choice of law matter, just on the question of the enforceability of the forum selection clause, there is no path that leads to California law. It's either a federal procedural matter or if it's a matter of state law, it is a matter of Missouri law because Missouri treats it as procedural. And that brings us right back to the question of the 54B certification, right? I mean, because the question at that point is, what is a claim? A claim is usually a cause of action that seeks relief. And then they say the enforcement of some right, okay? And I'm guessing your argument is going to be essentially that this is a claim because it enforces a right, and that is the right of the forum selection clause, right? The right to proceed in a Missouri court. And the corresponding right not to proceed in a California court or any court other than a Missouri court. Yes, Your Honor. All right. And so clearly in the California courts, you could have sought to remove the case to the federal court and sought transfer to Missouri, right, by enforcing the clause, right? The cases were not removable to federal court, Your Honor. Right. But what you could do is say they had to be brought in. You could have brought the claim in California saying that the forum selection clause is enforceable and that it should have been, the case needs to be brought in Missouri, right? Instead, we have this deck action which does, in fact, now create two parallel actions further complicating this matter and causing a situation in which there is a choice made by your client to enforce this in a manner in which the California courts are deprived of their ability to move forward. Our goal in bringing this claim, which is just one claim in a multi-claim lawsuit. There are other declaratory claims. There were claims for coercive relief as well. But, yes, our goal in bringing this declaratory claim on the forum selection clause was to enforce the agreement we reached with the appellants that we would litigate only in Missouri. Absolutely. And they've raised the question, the argument that there's a federalism question here, that ordinarily we don't go around stepping on the toes of state courts once they have an impersonum action that's been pursued and the court has jurisdiction over the parties. That's right. And the Donovan v. Dallas case that the appellants mentioned, I think, answers this question very directly. The rule in the federal system is these two cases can proceed in parallel until one of them reaches final judgment, at which point that final judgment becomes res judicata in the other action. And, yes, that was one of the reasons why we asked Judge Wu to enter this 54B final judgment was to shut down that duplicative California action, which was filed in breach of this forum selection clause, to consolidate proceedings in the forum where the parties agreed by contract to litigate all their disputes. That agreement, the forum selection clause in these agreements, does give rise to a separate set of legal rights and obligations under the contract. It's separate from, for example, the obligation not to solicit after they depart, their obligations not to misuse our confidential information. And that notion of a separate set of rights and obligations is one of the two facts, or two factors this court has leaned very heavily on in determining what counts as a separate claim. So I mentioned the John Deere insurance case that we cited in our brief. There's also a Supreme Court case that's a liberty mutual case where the Supreme Court endorsed that approach, that if you have a separate set of legal rights, that gives rise to a separate claim. The other approach is more factual in its inquiry and looks at, just very pragmatically, is there any set of facts that you have to prove on one claim that you would also have to prove on another claim? And here the answer to that question is no. There are no facts that overlap between the enforceability of this forum selection clause, the claim that Judge Boo entered a declaratory judgment on, and the other claims that remain to be tried in the case. That's the outdoor central case that gives that test of is there overlapping proof around common elements. In their briefs, the appellant said, well, there's overlapping issues around four things, negotiation, formation, and drafting of these agreements. And then the producers, the appellant's performance under these agreements. Not one of those facts is material or relevant to the enforceability of these forum selection clauses. It's undisputed. Formation is undisputed. There's no dispute of fact that they signed these agreements and that they're bound by these forum selection clauses. Drafting and negotiation are irrelevant. That's the Carnival Cruise Lines case that we discussed at length in our briefs. And their performance under the agreements, there's no case that says that's a fact that matters to the enforceability of a forum selection clause. So this is a separate packet of rights and obligations. It's decided by an independent set of facts. So that's enough to make it a separate claim. There's a case, I think it's very helpful for the Court on this, that they cite in their briefs. Dean v. County of Gage. That's a case from this Court where the issue there was a 1983 case. And the claimant had a claim for falsifying evidence and a claim against multiple defendants for conspiring to falsify evidence. And the District Court resolved the conspiracy claim on a discrete legal issue as a waiver point and then certified the conspiracy claim. That judgment dismissing it on waiver grounds, that gets certified under Rule 54B. This Court affirms and says that's a separate claim. Why was it? There was no factual overlap. Because it was decided on waiver grounds, it was a discrete, stand-alone issue of law. And the fact that it's a legal issue really matters to the 54B analysis because once this Court decides an issue of law, its decision becomes law of the case. It cannot be revisited in later proceedings in the District Court. So all these pragmatic concerns that animate the separate claim requirement, are we going to have overlapping appeals on the same issue? We're going to have to put in new facts on the same element. When you're dealing with a pure issue of law here, like we are here, like the Court was in Dean on the waiver question, there's no possibility of that overlapping proof becoming an issue because it's a pure issue of law, decided law of the case by this Court. And everyone agrees, there's no dispute on this point. The enforceability question is a pure question of law. Now we heard Mr. Gerber say that, well, the procedural posture in this case is a little unusual because it was decided on a summary judgment motion and not a 1404. Carnival Cruise Lines was decided on a summary judgment motion. All the same facts that they rely on here to challenge the enforceability of this forum selection clause were also present in the Carnival Cruise Lines record. That Court decided that appeal on a summary judgment because none of the facts they rely on are material. I do want to direct the Court to page 24 of the reply brief, which I think has a helpful discussion of Carnival Cruise Lines, where the appellants say, it is one thing to enforce a contract of adhesion in a cruise line contract. I think we can fairly read that as an admission that forum selection clauses in adhesion contracts are enforceable, which they are. And the other case that the appellants cite that I think really brings that case home is the Fouts case, which they cite on page 42 of the blue brief. The Fouts case makes the point that they're shooting at the wrong target. They could be right that these contracts are adhesive. That does not mean they're unenforceable. What the Fouts case tells us is, you look at a provision in an adhesion contract, and it's only unenforceable if two things are present. Number one, it has to be contrary to the party's reasonable expectations. And number two, it has to be both unfairly and unexpectedly unconscionable. They don't even argue unconscionability. An Atlantic Marine is absolutely dispositive on the question of reasonable expectations. A forum selection clause between two parties protects their legitimate expectations. That's the verbatim quote from the United States Supreme Court. So this adhesion argument that we've heard a lot about both this morning and in the briefs, even if they are right that this is an adhesive agreement, under Carnival Cruise Lines and Fouts, that is not enough to invalidate the clause. The last point I'd like to address is the public policy question about, is California public policy the relevant public policy? This Court's binding precedent holds that when the case is pending in Missouri, it's always Missouri public policy that matters. That's the Sirwell plumbing case that we cited in our briefs, as well as the Union Electric case. The reason for that is that a forum selection clause is at least in part procedural. Maybe entirely procedural, but at least in part it is procedural. Because of its procedural flavor, that gives the forum state where the action is pending a unique public policy interest in its enforcement. The Bremen, contrary to what we heard this morning, there's nothing in the Bremen that says we have to look to the forum state of some other forum other than the one where the action is pending. But even if we did, we're hearing about the wrong kind of public policy from the appellants. The choice of law clause, as Judge Erickson, as you pointed out, as Your Honor pointed out, is separate from the forum selection clause. Nothing about the Court's decision below decided any choice of law issues. And the Supreme Court, again, addressed this very issue in Atlantic Marine where there was a Virginia choice of forum clause and a Texas choice of law clause. And the Court said there's nothing to suggest a federal court in Virginia, A, won't apply Texas law if that's what the choice of law analysis calls for, and B, isn't competent or capable to do so. And the exact is true here. On the merits, they had their opportunity after this decision was issued to argue choice of law. Nothing about the forum selection clause decision prejudged the outcome of that analysis. And so unless the Court has any other questions, we would ask for it. I do have a question. I want to go back to the question of whether the forum selection clause and the raising of that clause in this lawsuit is a claim or an individual claim under Rule 54B. Now, do we have a case that focuses on a forum selection clause that confirms that it is indeed an individual claim under the rule? No, Your Honor. There's not an each circuit case specific to a forum. What case can we go to that confirms this? There's a, I think it's Amendous Pharmaceuticals case from the First Circuit that we cited in our brief where the enforceability of a forum selection clause was an element of the claims that were certified as final. And I believe in the Union Electric case, the district court, it made the determination that the forum selection clause in that case was separate from and antecedent to the merits of the other disputes between the parties, Your Honor. Okay. So the argument here is that this is a distinct contract or agreement between the parties to settle or to litigate a dispute in a particular forum. That's right, Your Honor. Is that what makes it, is that the underpinning of this argument that it is an individual claim? Yes, Your Honor. And I think we're all familiar with the rule that on fraudulent inducement type arguments, it's not enough to show that the contract as a whole was fraudulently induced. Those claims have to be specific to the forum selection clause itself. The reason why that's the rule is because the law treats that agreement between the two parties about where to litigate as a separate stand-alone packet of rights and obligations apart from what you might call the primary obligations of the agreement. So we have a contract that says what we're going to do out in the world, and we have this secondary agreement on forum. And we cited a couple of cases, one from the D.C. Circuit, one from the Eleventh Circuit, that explain the reason that's the rule is this forum selection clause is a stand-alone contract within a contract. All right. Thank you, Your Honors. All right. You may stand aside. And Appellant has some time left. Thank you, Your Honors.  Let me start with Judge Erickson's question. Your Honor, they did file, Lockton did file motions to dismiss for forum nonconvenience in California in both the Giblin and Kauffman cases. And in both cases, Judge Broadbelt and Judge Dillon in California denied Lockton's motion because the California courts ruled that under California's fundamental nonwaivable public policy, Lockton had not met its burden to show that sending the case to Arizona would not substantially diminish those fundamental rights of these California residents. After those rulings, after the Giblin ruling, that is when Lockton came up with this second approach, this second prong approach to getting around California public policy. And that is why we're in this unusual procedural posture where they brought this declaratory relief claim, which in part focuses on the forum selection clause, because they lost in California. And after losing in California, they said, well, let's go a different route. Let's file a motion for partial summary judgment. And then the court, in doing so, applied, misapplied the Bremen decision, didn't consider California public policy, and certified this as a partial judgment under Rule 54B with the express purpose of interfering with an ongoing parallel impersonum proceeding. And it is those facts that are entirely distinguishable from Downing v. Reisland. And on that basis, we ask to vacate the ruling in reverse. Thank you, Your Honors. All right. Thank you, counsel. The case has been well argued and it is submitted. The court will render a decision in due course.